UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALLEY NATIONAL GAS, INC.,

      Plaintiff,                                                 Case No. 07-11675

v.                                                              Honorable John Corbett O'Meara

MICHAEL B. MARIHUGH,

      Defendant.
                                           /

## **OPINION AND ORDER**

This matter came before the court on plaintiff Valley National Gas's April 16, 2007 motion for preliminary injunction. Plaintiff filed supplemental briefs August 20 and 31, 2007; Defendant filed supplemental briefs August 24, and September 4, 2007; and Plaintiff filed a motion to file a sur-reply and a motion to strike Defendant's September 4, 2007 supplement on September 6, 2007. Oral argument was heard September 20, 2007.

On April 26, 2007, this court refused to issue a temporary restraining order as requested by Plaintiff because it had been convinced that there were genuine issues of material fact related to Defendant's defense that he was constructively discharged by Plaintiff. However, based upon admissions in Defendant's filings with the court, as well as admissions by Defendant himself in deposition testimony, the court has concluded that in resisting Plaintiff's request for a temporary restraining order, statements were made misrepresenting facts on matters which must have been within the actual, or readily available, knowledge of the defendant and his lawyers. They include the following:

- "[T]hey say in their Pleadings that everybody was offered the same thing. Not so. And we will be able to prove it not so at

a hearing. He [Marihugh] was cut. Not only was he cut in his pay, but he was cut in his pay in such a way where they didn't offer him a written contract, they offered it to others." Ex. A, 4/26/07 hrg. tr. at 15.

- "Now they are telling him, all right, we will make sure at the end of the year you get the same, but you're going to take a $20,000 salary cut, which means every two weeks you're going to have $1,500 less in your paycheck." Id. at 15-16.

- "[Valley's] changing your [Marihugh's] compensation. Oh, [Valley's] not changing anybody else, but then he [Marihugh] finds out from one of his co-workers that he is the only one not getting the compensation. He knows he is not going to be able to make ends meet." Id. at 19.

- "What they [Valley] did was eviscerate his [Marihugh's] job. The took a million dollars of his accounts and gave them to other people. They lied to him about what they were giving other people. And there are witnesses, salespeople, who will so testify." Id. at 16.

- "[Valley was] also taking away his car, [Valley was] taking away his car allowance, [Valley was] taking away all his vacation, because that's what we're [Valley] going to do, take it or leave it, or you have no job." Id.

- "[Marihugh] has no knowledge [of pricing]. . . . The pricing is an industry pricing, and frankly, it's the customer that pretty much sets the price, because they all shop them." Id. at 20.

These representations are refuted by Plaintiff's own deposition testimony. Marihugh admitted that his salary *never* declined, right up through the date of his resignation from Valley. Marihugh dep. at 92. Far from demanding that Marihugh "take it or leave it," Marihugh admitted that Valley "listened to [his] concerns and came back to [him] with a proposal as an effort to meet those concerns." Id. at 109. That effort culminated in a *guarantee* that over the next two years, Marihugh's compensation would not decline. Id. at 168-69. Furthermore, only Marihugh received such a guarantee. Marihugh admitted that he received favorable treatment--an unreduced salary of

2

$68,000, 3% commissions under Valley's plan, and, unlike his co-workers, guaranteed commissions. Id. at 114, 116, 158-59, 172 ("Yes, if everyone got 48,000 then yes, I would have had a better package").

The evidence also demonstrates that the guaranteed commission was not to be paid at the end of the year; rather, it was paid to Marihugh monthly. Marihugh, therefore, did not suffer any decline in his paycheck every two weeks. Id. at 116; Ex. K. Marihugh's resignation letter also references the monthly "$1107.00 guaranteed commissions." Ex. D.; Marihugh dep. at 136-37.

As for not being offered a written contract as were his co-workers, both Burke and Vermillion have testified that they were *not* offered written contracts. Burke dep. at 10; Vermillion dep. at 15. Valley also paid Marihugh for the lost week of vacation time. Marihugh dep. at 175-76. All former Plymouth Wayne employees, which included Marihugh, were treated the same with respect to their cars and a car allowances; however, Marihugh's complaint was that the existing leases expired at different times, resulting in employees being transitioned at different points in time as the leases expired. Marihugh admitted, though, that "the car . . . mattered to me but it was just I could live with it or without it." Id. at 175. Plaintiff's ambivalence regarding the benefit of a company car fails to support a claim for constructive discharge.

Although Plaintiff's counsel asserted that Marihugh had no knowledge of pricing, he conceded that he retained knowledge of Valley's customers, contracts, and pricing. Id. at 74-75 ("I could ballpark it, yeah).

At the hearing on Plaintiff's request for temporary restraining order, Defendant's counsel also argued that only three customers were at issue. However, Marihugh admitted that by the hearing

3

date he had contacted at least eight Valley customers and that he had poisoned the well with at least some of them by telling them that Valley had breached its agreement. Id. at 266-69.

Additional material misrepresentations are found in Defendant's August 27, 2007 supplemental brief, including:

- Defendant's continued assertion that his compensation would decline. 8/24/07 br. at 5.

- Valley "transformed [Marihugh] into an employee at will by stripping him of a key employment benefit (discharge for just cause only . . . .) Id. at 14.

- Defendant opined that it "is probable . . . that [Jeff Vermillion] has not signed a non-compete and non-disclosure agreement with Valley, further eroding Valley's claim that customer lists and pricing lists are proprietary." Id. at 16.

Marihugh's July 1, 2005 Employment Agreement confirms that his employment with Valley was always at-will. Ex. W., ¶ 8(B) ("Employer may terminate this Agreement at any time *without cause*.") (emphasis added); Marihugh dep. at 12-16 (admitting that Valley "could have terminated [his] employment at any time . . . .").

In discovery, Valley produced Jeff Vermillion's July 1, 2005 Employment Agreement, which contained the identical non-compete and non-disclosure provisions. Defendant's counsel marked it as Deposition Exhibit 27 at Vermillion's July 20, 2007 deposition and questioned him about it, all of which belies Defendant's counsel's suggestion that it is probable that Vermillion had not signed such an agreement.

Defendant's counsel subsequently filed a second supplemental brief September 4, 2007, in which it argued for the first time that the non-compete agreement was unenforceable for lack of consideration and that the geographical scope of the restrictive covenant was overly broad and thus

4

unreasonable. However, the law is well established in Michigan that an employee's continued employment by a successor employer after a corporate buy-out is sufficient consideration for a non-compete agreement. Lowry Computer Prods Inc.. v. Head, 984 F. Supp. 1111, 1115 (E.D. Mich. 1997). Moreover, in this case Valley also paid Marihugh a significant signing bonus as additional consideration for entering into the employment agreement that contained the non-compete clause. "My understanding of the agreement was they would give me a signing bonus for signing and becoming a Valley employee." Marihugh dep. at 19. And Marihugh admits that Valley paid him a $12,000 signing bonus in three installments over the course of the Agreement's 18-month term. Id.

Finally, Defendant's counsel argued in its September 4 brief that the restricted geographic area of the non-compete agreement "stretches from Grand Rapids to Hamliton, Ontario [*sic*] and from Bay City to Dayton, Ohio." 9/4/07 br. at 2. The actual restricted geographic area is the area within "seventy-five (75) miles of the Business Locations." Ex. W., ¶ 6(B). "Business Locations" is defined as the four business sites maintained by Valley in Michigan: Wixom, Howell, Garden City, and Roseville. Id. A simple Mapquest search reveals that Defendant's counsel greatly exaggerated the 75-mile restricted area. For example, the distance between Garden City, Michigan, and Dayton, Ohio, is approximately 210 miles; the distance between Roseville, Michigan, and Hamilton, Ontario, is just over 188 miles.

The purpose of this order has been to specify some, but not all, of the misrepresentations made to the court that gave the court pause in ordering a temporary restraining order at the April 26, 2007 hearing and afterward. Because the temporary restraining order would have been issued at that time, a time closer in proximity to the actual breach of the non-compete agreement, the court will order

that the one-year prohibition contained in the non-compete agreement will commence from the date of the September 20, 2007 hearing rather than one year from the breach of the agreement. Further, the court will order Defendant's counsel to pay Plaintiff's reasonable costs and attorney fees associated with obtaining this preliminary injunctive relief.

## **ORDER**

It is hereby **ORDERED** that Plaintiff's April 16, 2007 motion for preliminary injunction is **GRANTED**.

It is further **ORDERED** that the one-year limitation of the non-compete clause of the employment agreement is to commence September 20, 2007.

It is further **ORDERED** that Defendant's counsel **PAY** to plaintiff Valley National Gas its reasonable costs and attorney fees associated with obtaining this preliminary injunction.

s/John Corbett O'Meara  
United States District Judge

Dated: October 1, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 1, 2007, by electronic and/or ordinary mail.

s/William Barkholz  
Case Manager